440 F.2d 1193
 TAMPA SHIP REPAIR & DAY DOCK COMPANY, Inc.,
Plaintiff-Appellant-Cross-Appellee,
v.
A.P. ST. PHILIP, INC., et al., Defendants-Appellees, v.
Harry J. WILLIAMS, Third-Party
Defendant-Appellee-Cross-Appellant.
 No. 29988.
 United States Court of Appeals, Fifth Circuit.
 March 9, 1971, Rehearing Denied April 13, 1971.
 
 Brooks P. Hoyt, Jack C. Rinard, of Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellant.
 Dewey R. Villareal, Tampa, Fla., for Penn Marine Co., Inc.
 David G. Hanlon, Thomas C. MacDonald, Jr., Tampa, Fla., for A.P. St. Philip, Inc.; Shackleford, Farrior, Stallings & Evans, Professional Assn., Tampa, Fla., of counsel.
 James O. Davis, Jr., Tampa, Fla., Edward R. Downing, Miami, Fla., and Margaret Deaton, Tampa, Fla., for Harry J. Williams.
 Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This appeal and cross appeal raises only fact issues. The litigation arises out of a vessel shifting operation that took place in Tampa harbor on October 28, 1965. On that date, the Vanguard was shifted from what is known as the Tasco slip southward to the dry dock facilities of the shipyard. The Vanguard was a 'dead ship', and motor power was supplied by three tug boats, the Mary, the Edward and the Tony.
 
 
 2
 As the Vanguard was proceeding into the shipyard dry dock, she struck a piling cluster on her starboard bow, after which her bow struck the dry dock wall and open gate causing damage both to the dry dock facility and to the vessel.
 
 
 3
 The shipyard sought to recover against the Vanguard, her owner, Penn Marine, the tugs Mary, Edward and Tony, and their owner, St. Philip. Penn Marine answered on behalf of the Vanguard, counterclaimed against the shipyard, cross-claimed against St. Philip and filed a third party complaint against the pilot. St. Philip did the same. The shipyard thus amended its complaint to join the pilot as an additional party defendant.
 
 
 4
 The trial court found: (1) the shipyard, St. Philip, the tugs Mary, Edward and Tony, the Vanguard and Penn Marine were all exonerated from any liability; (2) the pilot was held liable to Penn Marine for the sum of $6,598, the cost of repair of the damages sustained to the bow of the Vanguard; (3) the pilot was held liable to the shipyard for the sum of $8,590, the cost of repairs of the damaged area of the dry dock and dry dock gate; (4) the shipyard was held not entitled to recover the cost of constructing and installing a U structure designed to permit inspection of underwater areas of the dry dock wall.
 
 
 5
 The shipyard, plaintiff-appellant and cross-appellee now argues that it is entitled to recover, not only the sum of $8,590 allowed by the trial court, but the total sum of $52,865.61. This difference, it argues, represents the cost of construction and installation of the U structure.
 
 
 6
 The shipyard did not act reasonably in using the U structure, even for the purpose of underwater inspection, since the Penn Vanguard did not fit in that area, there was no indication of underwater damage reported by the divers in that area, and the shipyard used the dry dock for a year before installing the U structure.
 
 
 7
 The shipyard argues this finding is clearly erroneous. It also argues that the District Court erred in striking from shipyard's exhibit No. 18 the cost of ultimate removal of the U structure.
 
 
 8
 The pilot, the third-party defendant-cross-appellant on whom liability has been imposed, argues: (1) the fact that the ship was not properly aligned with the dry dock was due to the fact that the tugs prematurely cast off their lines without the pilot's derection. It was not due to any lack of skill on his part; (2) the pilot argues that the district court erred in holding that the make up of the tugs 'as actually used in compliance with Williams' instructions, afforded no stopping or backing power to the object towed, * * * and that, therefore, the pilot proceeded without power to check or stay the forward speed of the vessel, thereby failing to use the necessary degree of skill required of his profession;' (3) he argues that a bailee in possession of a vessel who engages tugs and a non-compulsory pilot for the shifting of the vessel on the premises of the bailee is not responsible for damage done to the bailee's facilities by the movement of the vessel; (4) a vessel which receives damages while in the process of being dry docked is not entitled to have the entire cost of the drydocking attributed to the damage thus sustained.
 
 
 9
 Appellees simply argue the trial court's findings were not clearly erroneous. (1) He (the pilot) failed to ascertain that the Vanguard 'was not aligned with the dry dock axis before the approach to the dry dock was commenced.'
 
 
 10
 (2) He positioned the tugs so that the Vanguard had no stopping power once the pilot proceeded forward without the proper alignment.
 
 
 11
 In casting the entire cost on the Pilot Williams, the trial court resolved many disputed facts and theories. We find substantial evidence on the record adequately supports these findings. The record also supports the finding of the trial court that the installation of U structure was not required to assess the damages. There was, therefore, no error in the court's ruling out of evidence the exhibit showing the cost of rewiring the structure.
 
 
 12
 Thus a judgment against one who was not originally a party to the action must stand in the amount found by the trial court.
 
 
 13
 The judgment is in all respects affirmed.
 
 ON PETITION FOR REHEARING
 TUTTLE, Circuit Judge:
 
 14
 We have carefully considered the Petition for Rehearing and the contention that the trial court was without the basis in the evidence and the proper inferences to be drawn therefrom for rejecting the testimony of an impartial surveyor and the vice president of appellant that the installation of the so called 'U' structure was a necessary part of the task of repairing the damage caused by the negligence of the pilot. A review of the record clearly discloses that the installation of the 'U' structure was of a permanent benefit to appellant in that it permitted the introduction into the dry dock of longer vessels than would previously have been readily possible. The evidence is also undisputed that the structure was not built for a year after the known damage to the dry dock had been repaired. There is other evidence as to the location of the damage to the structure in general which, together with the evidence already mentioned, would permit inferences to be drawn by the trial court sufficient to warrant its refection of the opinion evidence (which, incidently, is never binding in the sense that evidence of historical facts is binding) of the two witnesses who testified on behalf of the Dry Dock Co.
 
 
 15
 The petition for rehearing is denied.